UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LOUIS P. FROMER,

Plaintiff,

v.                                                                  CAUSE NO. 3:21-CV-513-DRL-MGG

GEORGE PAYNE *et al.*,

Defendants.

OPINION AND ORDER

Louis P. Fromer, a prisoner without a lawyer, filed a second amended complaint. ECF 37. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

The second amended complaint attempts to add several untimely claims that don't relate back to either of his prior complaints. *See* ECF 2 and 32. "Indiana's two-year statute of limitations . . . is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983." *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001). The second amended complaint was signed February 22, 2022. Claims arising before

February 22, 2020 are untimely unless they relate back to claims raised in the original

complaint.

> Under Rule 15(c)(1)(C), an amendment to a pleading that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of the original pleading so long as: (1) the amendment asserts a claim or defense arising out of the same conduct, transaction, or occurrence as the original complaint; (2) "within the period provided by Rule 4(m)," the party added by amendment "received such notice of the action that it will not be prejudiced in defending on the merits"; and (3) the added party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

*Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021).

Capt. Calloway and Lt. Lott are alleged to have retaliated against Mr. Fromer and

wrongfully housed him in administrative segregation under unconstitutional conditions

from July 3, 2019 to August 23, 2019. ECF 37 at 3 and 13. Neither were named as a

defendant in the prior complaints. Their omission was not a case of mistaken identity;

they were simply not named.

Nurse Lacey Gorske is alleged to have retaliated against Mr. Fromer and denied

him adequate medical treatment on July 11, 2019; July 23, 2019; and August 1, 2019. *Id.* at

4, 6, 8, and 14. She was not named as a defendant in the prior complaints. Her omission

was not a case of mistaken identity; she was simply not named. Mr. Fromer argues the

medical claim is timely because it is a continuing violation for as long as she could have

but did not provide him medical treatment. He does not say how long that was, but

documentation provided with the second amended complaint shows the continuing

violation doctrine does not apply here. In the month after his last alleged contact with

Nurse Gorske, he was seen by other healthcare providers. ECF 37-1 at 47-48, 63-66, 69-71,

and 81-83. "Once the doctors were no longer responsible for [inmate's] treatment, the limitations period began to run." *Weaver v. Corizon Health, Inc.*, 2022 WL 61434, at *2 (7th Cir. Jan. 6, 2022). Mr. Fromer had three discrete encounters with Nurse Gorske. She was not his exclusive or senior medical provider. He alleges he continued to have medical problems, but Nurse Gorske cannot be held liable for the quality of medical care he received when he was being treated by others.

Dr. Heather Verdon is alleged to have retaliated against Mr. Fromer and denied him adequate mental health treatment by missing an appointment with him on July 11, 2019; by not ordering he be moved out of administrative segregation after thirty days when she determined he was seriously mentally ill on July 30, 2019; by not ordering he be moved out of administrative segregation after thirty days when she knew he was seriously mentally ill on August 2, 2019; and by keeping him in administrative segregation for more than thirty days when she knew he was seriously mentally ill on August 16, 2019. ECF 37 at 5, 7, 8, 10, and 14. She was not named as a defendant in the prior complaints. Her omission was not a case of mistaken identity; she was simply not named.

Therapist Steven Myles is alleged to have retaliated against Mr. Fromer and denied him adequate medical treatment by not classifying him as seriously mentally ill on July 5, 2019; and by not releasing him from administrative segregation after thirty days when he was having auditory hallucinations and attempting suicide on August 16, 2019. *Id*. at 10 and 14 and ECF 37-1 at 4-5. He was not named as a defendant in the prior complaints. His omission was not a case of mistaken identity; he was simply not named.

3

All of these claims are untimely because they were raised for the first time in the amended complaint signed February 22, 2022. Mr. Fromer's allegations against the remaining four defendants relate back because they were named in the original complaint and "arose out of the conduct, transaction, or occurrence set out . . . in the original" complaint. Fed. R. Civ. P. 15(c)(1)(B).

Mr. Fromer alleges he discovered bed bugs in his cell on July 12, 2019. ECF 37 at 5. On July 17, 2019, he says Pest Control Officer Kochvar visited his cell, but refused to spray until he put all his legal paperwork in garbage bags. *Id*. She gave him two or three bags, but told him to use them for is clothing. He alleges she refused to give him the ten to twelve additional bags he needed for his legal paperwork. *Id*. On July 22, 2019, he alleges Health and Safety Supervisor Derek Boyen promised to personally spray for bed bugs if Officer Kochvar did not. *Id*. at 6. He alleges neither sprayed his cell before he was moved from D cell house to B cell house on August 23, 2019.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation.

*Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th

Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with

deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the

Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks

omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate

complained about severe deprivations but was ignored, he established a "prototypical

case of deliberate indifference"). Prolonged exposure to infestations by rodents or insects

can amount to an Eighth Amendment violation. *See Smith v. Dart*, 803 F.3d 304, 312 (7th

Cir. 2015); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). Mr. Fromer states a claim

against Officer Kochvar for deliberate indifference to the alleged bed bug infestation from

July 17 through August 23, 2019. He states a claim against Supervisor Boyen for deliberate

indifference to the alleged bed bug infestation from July 22 through August 23, 2019.

Based on the same facts, Mr. Fromer alleges Officer Kochvar retaliated against him

for filing grievances against her and lawsuits against others. ECF 37 at 5 and 14. Here, the

alleged act of retaliation—refusing to spray—is the same act underlying the Eighth

Amendment claim. Proceeding on different constitutional theories based on the same

facts is redundant. *See Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017) (affirming

dismissal of Eighth Amendment claim because the same facts comprised a more

applicable First Amendment claim); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing additional claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels"); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (analyzing allegations under the most "explicit textual source of constitutional protection"). Here, the most explicit constitutional provision is the Eighth Amendment. Mr. Fromer would gain nothing by proceeding on a duplicate retaliation claim.

The second amended complaint makes three other allegations about Pest Control Officer Kochvar. First, she is alleged to have refused to spray after falsely denying Mr. Fromer had bed bugs in October 2019 while he was housed in B cell house. ECF 37 at 10. This states a claim. Second, she is alleged to have refused to spray in June 2020 when Mr. Fromer was housed in C cell house because he would not pack up his property so it could also be cleaned. ECF 37 at 11. This does not state a claim because it was Mr. Fromer and not Officer Kochvar who prevented spraying on that occasion. Though Mr. Fromer only asked for a few days delay to pack his property, he was soon moved to B cell house. Thus, this occasion does not state claim even if she did not follow up in a few days. Third, he alleges she refused to spray for bed bugs on July 20, 2021, when he was in A cell house even though she sprayed for other insect infestations. ECF 37 at 11. This states a claim from July 20, 2021, until he was moved to a different cell house.

Officer Moore is alleged to have taunted Mr. Fromer with the possibility of going to medical on July 30, 2019, but did not take him after he got dressed. ECF 37 at 7. Although correctional officers may not ignore an inmate's serious medical needs, *Board*, 394 F.3d at 478, nothing in the complaint suggests Mr. Fromer needed immediate medical

care. Verbal taunting alone does not constitute an Eighth Amendment violation. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *abrogated in part on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). Though Dr. Verdon noted a missed visit that day, she saw him three days later. ECF 37-1 at 26-27 and 37-38.

Officer Moore is also alleged to have not removed Mr. Fromer from segregation after he had been there thirty days. ECF 37 at 8. The second amended complaint does not plausibly allege facts showing Officer Moore could have transferred him out of segregation. [P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). "[A] plaintiff must do better than putting a few words on paper

that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

Nurse Fey Wenzel is alleged to have refused to renew Mr. Fromer's prescription for Zantac on August 6, 2019. ECF 37 at 8. Zantac is the brand name for ranitidine which was used to treat heartburn and was available in prescription and non-prescription strengths. He alleges she told him to buy it off commissary, but he says that was not possible. He alleges she told him he could have had his prescription renewed at the chronic care visit he missed the previous day, but he says he did not know about the appointment. He alleges she told him he needed fill out paperwork requesting an appointment if he wanted the prescription renewed. *Id.* at 9 and ECF 37-1 at 48. Medical records show he had a chronic care visit eight days later where he was prescribed Zantac by Dr. Thews. *Id.* at 63-66.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For medical professionals to be held liable for deliberate indifference to an inmate's medical needs, they must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Even if her suggestion that he buy Zantac from commissary was impossible, physicians prescribe prescription strength medications – nurses do not. It was not a departure from

professional standards for Nurse Wenzel to tell Mr. Fromer to schedule a doctor's appointment to get his prescription renewed.

During the same appointment, Nurse Wenzel is alleged to have refused to treat Mr. Fromer's bed bug bites. ECF 37 at 8. The complaint does not plausibly allege Mr. Fromer had a medical emergency that required immediate attention. He alleges Nurse Wenzel would not refer him to a doctor, but he clearly knew how to request a medical appointment and there is no indication she prevented him from doing so.

Mr. Fromer wrote in the second amended complaint, "[o]n 8-15-21 I again saw Nurse Fey [Wenzel] for the infected wounds and sever pain from the bed bug bites." ECF 37 at 9. Though he wrote the year 2021 in that sentence, he must have meant to write 2019 because the preceding paragraph discusses events the day before on August 14, 2019, and the following paragraph discusses events the day after on August 16, 2019. The medical records show sometime between August 6 and August 14, 2019, Mr. Fromer was prescribed two topical medications: Persa-Gel 10% and Silvadene 1%. *See* ECF 37-1 at 48, 65, and 70. Persa-Gel is the brand name for benzoyl peroxide which "is used to treat mild to moderate acne [and] may take 4 to 6 weeks" to work. Benzoyl Peroxide Topical, MedlinePlus,            National            Library            of            Medicine, https://medlineplus.gov/druginfo/meds/a601026.html. Silvadene is the brand name for silver sulfadiazine which "is used to prevent and treat infections of second- and third-degree burns. It kills a wide variety of bacteria [and] is sometimes prescribed for other uses . . .." Silver Sulfadiazine, MedlinePlus, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682598.html. It is unclear what Mr. Fromer

believed Nurse Wenzel could or should have done in light of these recently prescribed topical treatments. It is clear inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Jackson v. Kotter*, 541 F.3d 688, 69798 (7th Cir. 2008).

Mr. Fromer alleges he still has bed bugs in his cell and is not receiving medical treatment for bed bug bites. ECF 37 at 11 and 15. The Indiana State Prison Warden, in his official capacity, has both the authority and the responsibility to ensure inmates at his facility are provided constitutionally adequate conditions of confinement and constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011); and *Daniel v. Cook Cty.*, 833 F.3d 728, 737 (7th Cir. 2016) ("[T]he constitutional duty under the Eighth and Fourteenth Amendments to provide adequate health care rests on the custodian."). Though Mr. Fromer did not name the warden as a defendant, rather than delaying this case by

requiring him to file a third amended complaint, the court will add him so Mr. Fromer can proceed on a claim for permanent injunctive relief.

For these reasons, the court:

(1) DIRECTS the clerk to add the Indiana State Prison Warden as a defendant;

(2) GRANTS Louis P. Fromer leave to proceed against the Indiana State Prison Warden in his official capacity for permanent injunctive relief to obtain constitutionally adequate treatment for his bed bug infestation and bed bug bites as required by the Eighth Amendment;

(3) GRANTS Louis P. Fromer leave to proceed against Pest Control Officer Kochvar in her individual capacity for compensatory and punitive damages for refusing to spray his bed bug infestation in D cell house from July 17, 2019, through August 23, 2019, in violation of the Eighth Amendment;

(4) GRANTS Louis P. Fromer leave to proceed against Pest Control Officer Kochvar in her individual capacity for compensatory and punitive damages for refusing to spray his bed bug infestation in B cell house in October 2019, in violation of the Eighth Amendment;

(5) GRANTS Louis P. Fromer leave to proceed against Pest Control Officer Kochvar in her individual capacity for compensatory and punitive damages for refusing to spray his bed bug infestation in A cell house from July 20, 2021, until he was moved to a different cell house, in violation of the Eighth Amendment;

(6) GRANTS Louis P. Fromer leave to proceed against Health and Safety Supervisor Derek Boyen in his individual capacity for compensatory and punitive

damages for refusing to spray his bed bug infestation in D cell house from July 22, 2019, through August 23, 2019, in violation of the Eighth Amendment;

(7) DISMISSES all other claims;

(8) DISMISSES Faye Wenzel, Lacey Gorske, Moore, Stephen Myles, Heather Verdon, Lott, and Calloway;

(9) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) the Indiana State Prison Warden, Pest Control Officer Kochvar, and Health and Safety Supervisor Derek Boyen at the Indiana Department of Correction, with a copy of this order and the second amended complaint (ECF 37), under 28 U.S.C. § 1915(d);

(10) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(11) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Indiana State Prison Warden, Pest Control Officer Kochvar, and Health and Safety Supervisor Derek Boyen to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

May 16, 2022                                   *s/ Damon R. Leichty*
                                               Judge, United States District Court